UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>DOUGLAS BRUCE HIMMELFARB,<br><br>                      Debtor. | Case No. 13-00229<br>Chapter 11 |

## MOTION FOR ORDER OF CONTEMPT

Third-parties Christopher Rothko and Marion Kahan hereby request that debtor Douglas H. Himmelfarb and his counsel Christopher J. Muzzi, Esq., be held in civil contempt for having violated and disregarded orders of this court, and as grounds therefore states as follows:

### STATEMENT OF FACTS

1) Douglas Himmelfarb ("Himmelfarb"), the Debtor herein, is the owner of a work of art that he believes to be an authentic work of the deceased artist Mark Rothko. Christopher J. Muzzi, Esq. ("Muzzi") is his counsel.

2) Third party Christopher Rothko ("Rothko") is the son of Mark Rothko, and third party Marion Kahan ("Kahan") manages the archives and related papers owned in part by Christopher Rothko.

3) In or about July 2013, Himmelfarb and Muzzi caused subpoenas to be served on Rothko and Kahan, requiring them to produce documents and provide deposition testimony in the above-captioned bankruptcy matter.

4) In order to protect the confidentiality of their documents and testimony, a Stipulated Protective Order was negotiated and executed, a true and correct copy of which is attached hereto as Exhibit 1.

5)      As set forth in the Stipulated Protective Order, documents and testimony designated confidential "shall be used by the party or parties to whom the information is produced solely for the purpose of this case" and "shall not be disclosed to any person other than" those involved in the litigation. The Court so ordered the Stipulated Protective Order on August 7, 2013. (Dkt. No. 97.)

6)      Pursuant to the terms of the Stipulated Protective Order, Rothko's and Kahan's deposition transcripts were designated confidential in their entirety, as were the documents they produced.

7)      After receiving documents and taking deposition testimony from Kahan and Rothko, Muzzi applied to the Court to challenge various confidentiality designations made on behalf of Rothko and Kahan. Substantial litigation followed, including briefing and oral argument.

8)      By order dated December 13, 2013, this Court held that Himmelfarb could show certain photographs obtained from Kahan to outside parties, as long as Himmelfarb provided the outside parties with a written disclaimer, prepared and approved by the Court, protecting the interests of Kahan and Rothko. (Dkt. No. 172.) Significantly, this Court did not authorize the public disclosure of any other documents or deposition testimony. In fact, the December 13 Order clearly stated that "[a]ll other documents and testimony provided by Ms. Kahan or the Rothkos shall remain confidential." (*Id.* p.4.)

9)      On December 27, 2013, Himmelfarb, through Muzzi, moved for reconsideration. On January 9, 2013, the Court affirmed its prior order in part, and reversed it in part, but in no way diminished the confidentiality protections that had been afforded to Kahan and Rothko.

(Dkt. No. 181.) Indeed, it reiterated that "[a]ll other documents and testimony provided by Ms. Kahan or the Rothkos shall remain confidential." (*Id.* p.5.)

10) On April 2, 2014, Kahan received an email from Jennifer Maloney, a reporter for the Wall Street Journal, stating in relevant part: "I'm working on a story about Douglas Himmelfarb's painting" and "I have read the deposition you gave in Mr. Himmelfarb's bankruptcy case, as well as your correspondence on the painting."

11) On April 3, 2014, Kahan's counsel, Jonathan Bach, Esq., forwarded the email to Muzzi, stating: "it appears that you or your client have made available to third parties, including the press, copies of Ms. Kahan's deposition transcript and other materials despite the existence of a protective order" and "without first obtaining permission from the Court or relief from the protective order." Bach demanded an explanation and indicated that "[w]e are considering all our options, including seeking sanctions for contempt of court."

12) Muzzi responded to Bach by email on April 7. In his email, Muzzi did not deny that he and his client had disseminated the deposition transcript in violation of the Stipulated Protective Order, or provide any explanation for such conduct, but indicated that "[i]f there was any breach of the protective order, I have tried to mitigate it."

13) Bach responded by email the same day, stating "Telling to me is the fact that you have not denied that you or your client was responsible for the breach of the protective order in the first place. We can only conclude that the order was breached by someone at your end. We will proceed to inform the Court and seek appropriate relief." A true and correct copy of the referenced correspondence is attached hereto as Exhibit 2.

3

14) On April 15, 2014, the Wall Street Journal reporter reached out to Kahan again, leaving a voicemail that indicated that an article discussing Kahan's testimony would soon be published.

15) Also on April 15, 2014, the Wall Street Journal reporter emailed undersigned counsel, indicating her contemplated article would discuss both Kahan and Rothko. A true and correct copy of that email is attached hereto as Exhibit 3.

16) Kahan and Rothko incurred legal fees and expenses in responding to the subpoenas, negotiating and executing the Stipulated Protective Order, and defending their confidentiality designations.

17) As a result of the extensive litigation, which included oral argument and a motion for reconsideration, there is no doubt that Muzzi and Himmelfarb were well aware of the court-ordered prohibitions against disclosure of confidential materials.

## ARGUMENT

18) Violation of a specific and definite court order, including a discovery order, is grounds for a finding of civil contempt. *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284–85 (9th Cir.1996); *In re Accra Commc'ns Grp., Inc.*, 2008 WL 2705101, *3 (Bankr. N.D. Cal. Jun. 30, 2008). Disclosure of deposition transcripts and related documents to a Wall Street Journal reporter is a flagrant violation of three separate court orders: the Stipulated Protective Order so ordered by the Court on August 7, 2013; a further Order dated December 13, 2013; and a further Order dated January 9, 2014. All of these orders make clear that disclosure of the deposition transcript and related documents to outside parties is strictly forbidden.

19) Where, as here, the violation was willful, this Court may award damages for contempt pursuant to Bankruptcy Code § 105. *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003); *In re Gaston*, 2011 WL 1434758 (Bankr. D. Haw. Apr. 14, 2011); 11 U.S.C. § 105(a).

"Willfulness" in this context does not require a specific intent to violate the order, but rather a finding that (1) the violator knew of the order and (2) that the actions which violated the order were intentional. *In re Dyer*, 322 F.3d at 1191; *In re Feagins*, 439 B.R. 165, 176 (Bankr. D. Haw. 2010). Damage awards may include attorney's fees and costs, as well as "relatively mild non-compensatory fines." *In re Dyer*, 322 F.3d at 1192-93; *In re Gaston*, 2011 WL 1434758.

20) In this case, Himmelfarb and Muzzi were aware of the Stipulated Protective Order and two subsequent Orders, all of which were the subject of extensive litigation. Moreover, when confronted about the breach of these orders, Muzzi did not deny that he and his client were responsible for the disclosure.

21) One further point must be emphasized. The actions of the Himmelfarb and Muzzi have resulted not only in outside disclosure, but in disclosure to a major organ of the press, the Wall Street Journal, a newspaper with a vast readership.

22) Kahan and Rothko are entitled to all attorney's fees and expenses incurred by them in responding to the debtor's subpoenas, as it appears that such subpoenas were served for the sole purpose of going public with the information and testimony obtained in order to promote an item for sale. At the very least, Kahan and Rothko are entitled to all attorney's fees and expenses incurred by their counsel in connection with all previous negotiation and litigation concerning the Stipulated Protective Order and the issue of confidentiality, as well as to all fees and costs associated with the present motion.

## CONCLUSION

For the foregoing reasons, Rothko and Kahan respectfully request that the Court issue an order:

1. Finding Himmelfarb and Muzzi in civil contempt;

5

U.S. Bankruptcy Court - Hawaii    #13-00229    Dkt # 203    Filed 04/17/14    Page 5 of 7

2. Requiring Himmelfarb and Muzzi to pay all attorneys' fees and expenses incurred by Rothko and Kahan in responding to the debtor's subpoenas, including but not limited to all fees and expenses incurred in connection with:

    a. Producing documents and providing deposition testimony;

    b. Negotiation of the Stipulated Protective Order;

    c. Litigation of related issues, including the two subsequent court orders; and

    d. Preparation and filing of the present motion;

3. Requiring Himmelfarb and Muzzi promptly to disclose the names of all outside parties to whom any confidential information obtained from Rothko and Kahan has been disclosed, along with their contact information and the dates on which such disclosure occurred;

4. Requiring Himmelfarb and Muzzi to claw back all such confidential information and to confirm to the Court in writing that they have done so;

5. Requiring the debtor and his counsel to pay a fine of at least $2,000 for each such disclosure; and

6. Granting such other sanctions and relief as this Court deems just and proper.

Dated: April 16, 2014

                                        Respectfully submitted,

                                        MCCORRISTON MILLER MUKAI MACKINNON

                                        By:   /s/ Jonathan Bach
                                                  Robert G. Klein

                                        Five Waterfront Plaza, 4th Floor
                                        500 Ala Moana Boulevard
                                        Honolulu, Hawaii 96813
                                        Telephone: (808) 529-7300

and

Jonathan Bach
*Pro Hac Vice*
(application in progress; admission pending)
COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000

*Attorneys for Marion Kahan
and Christopher Rothko*

7