Date Signed:
May 28, 2015



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>DOUGLAS BRUCE<br>HIMMELFARB,<br><br>                  Debtor. | Case No. 13-00229<br>Chapter 11<br><br>Related Docket No. 203 |

## MEMORANDUM OF DECISION ON
## MOTION AND COUNTERMOTION FOR
## CONTEMPT CITATION AND SANCTIONS

I previously held that the debtor, Douglas Himmelfarb, committed a willful violation of two court orders when he disclosed information he obtained from Christopher Rothko and Marian Kahan (the "Rothko parties"). I cited him for contempt and required him to pay attorneys' fees and costs in the amount of $68,063.18 and a fine of $9,000.00.[1]

On appeal, the district court affirmed the contempt citation.[2] The court

---

[1] Dkt. 272.

[2] Dkt. 328.

vacated the award of attorneys' fees, the denial of Himmelfarb's countermotion for contempt, and the fine, and remanded the matter for reconsideration of those issues.

The parties have filed additional declarations, exhibits, and memoranda. The relevant facts are set out in my prior decision and in the district court's decision and I will repeat them here only as necessary.

## I. Attorneys' Fees

The parties are in agreement on one point (even if they can't quite bring themselves to admit it). The Rothko parties argue that the court should award at least $44,572 in attorneys's fees.[3] Himmelfarb says that he "will not challenge an award of up to $44,572.13 . . . ."[4]

I have independently reviewed the billing statements submitted by the Rothko parties, and I am satisfied that $44,572.13 is a reasonable amount of attorneys' fees flowing directly from Himmelfarb's contempt. The district court has affirmed my determination that the hourly rates charged are reasonable in the circumstances of this case. Based on the time records, the declarations, and my personal observation of the case as it was litigated, I am satisfied that the services were reasonably rendered as a direct result of Himmelfarb's contempt.

The remaining dispute has to do with the attorneys' fees incurred by the

---

[3] Dkt. 347 at 5.

[4] Dkt. 356-4 at 7.

2

Rothko parties on appeal. I agree with Himmelfarb and will not award such fees for two reasons. First, I do not have power to award attorneys' fees in connection with the appeal.[5] Second, Himmelfarb prevailed in part on appeal.

## II. Himmelfarb's Countermotion

The district court correctly pointed out that I failed to explain why I denied Himmelfarb's countermotion seeking a contempt citation against the Rothko parties.

The Stipulated Protective Order[6] provides that:

> Any party or non-party may designate as "confidential" . . . any document or response to discovery which that party or non-party considers in good faith to contain information involving trade secrets, or confidential business or financial information, subject to protection under the Federal Rules of Civil Procedure . . . or applicable state law ("Confidential Information").

The order provides that a party could make the confidentiality designation on the record during a deposition or within twenty days after receipt of the deposition transcript.[7] Any party wishing to challenge a confidentiality designation could do so by giving written notice to the designating party. The designating party then had twenty-five days to seek a court order designating the material as confidential.

Himmelfarb argues that the Rothko parties' designation was improper for two

---

[5] *State of California Emp. Dev. Dept. v. Taxel (In re Del Mission Inc.)*, 98 F.3d 1147, 1153 (9th Cir. 1996); *Vasseli v. Wells Fargo Bank (In re Vasseli)*, 5 F.3d 351 (9th Cir. 1993).

[6] Dkt. 97 at 2.

[7] *Id.* at 2-3.

3

reasons.

### A. Overbreadth

First, he argues that the Rothko parties' designations were so broad that they could not have been made in good faith. He contends that the Rothko parties' had no "good faith" basis to contend that all of the materials they designated, such as their answers to deposition questions about their identity and background, amounted to "trade secrets" or "confidential business or financial information."

This argument ignores the circumstances in which the Rothko parties made their designations.

It is true that the Rothko parties initially designated all of the documents they produced[8] and all of their deposition testimony[9] as confidential. But they also made clear that they were willing to consider narrowing the designations.[10] For example, at Marian Kahan's deposition, her counsel stated that

> I will just state for the record that we would like the deposition, the transcript, [and] all information [and] material associated with it to be kept absolutely confidential and maintained under the Protective Order in the highest possible category of confidentiality, and *unless and until some other understanding is reached*, we want it treated in that manner.[11]

---

[8] Dkt. 220-12 at 8, 27, 31, 34, 61.

[9] Dkt. 220-11 at 4.

[10] Dkt. 220-12 at 32 ("Please advise us with respect to your intended use of the materials so that we can determine whether to waive confidentiality.").

[11] Dkt. 220-10 at 4 (emphasis added).

4

Himmelfarb's counsel agreed:

> Understood. I mean, *at some point if we disagree we'll speak with you, and then do what is appropriate at that time*, but understood.[12]

Later that day, at Christopher Rothko's deposition, his counsel said:

> for the record, before we get started . . we wish to invoke the full confidentiality protection under the Protective Order to the maximum extent possible. *Unless otherwise determined by the Court or you talk to me,* we ask that this be kept totally confidential, and not be shared with anyone else.[13]

Himmelfarb's counsel did not disagree. He qualified this statement slightly by saying, "Well, kept confidential in terms of the Protective Order," to which the Rothko parties' counsel responded, "Correct."[14]

In context, it is clear that the Rothko parties made these sweeping designations as a precautionary measure, in order to avoid waiver. This was particularly appropriate at the outset of the depositions, because the Rothko parties could not have known what questions Himmelfarb's counsel would ask. The Rothko parties were willing to consider narrowing their confidentiality designations after discussing the matter with Himmelfarb's counsel. This discussion did not occur for a simple reason: Himmelfarb decided to ignore the order and distribute the designated

---

[12] *Id.* (emphasis added).

[13] Dkt. 220-11 at 4 (emphasis added).

[14] *Id.*

5

materials to a New York Times reporter and others.

In this context, I find that the Rothko parties' initial designations were made in good faith despite their breadth.

### B. *"Confidential Business Information"*

Second, Himmelfarb points out that, under the Stipulated Protective Order, the Rothko parties could designate as confidential only "information involving trade secrets, or confidential business or financial information, subject to protection under the Federal Rules of Civil Procedure . . . ." The Rothko parties say that they designated the materials because they had historically treated them as confidential, had not made them generally available to the public, and were afraid of being sued if they did so. Himmelfarb argues that this amounts to a concession by the Rothko parties that they did not designate the materials because they contain "trade secrets" or "confidential business or financial information." Himmelfarb therefore contends that, by the Rothko parties' own description, the information was not covered by the Stipulated Protective Order.

Himmelfarb's reading of the Stipulated Protective Order is untenable.

#### 1. The materials are confidential business information.

There is no dispute that the materials include "confidential" information within the meaning of the Stipulated Protective Order. Information that is

U.S. Bankruptcy Court - Hawaii    #13-00229    Dkt # 368    Filed  05/28/15    Page 6 of 16

"confidential" is information "meant to be kept secret."[15] Himmelfarb does not dispute the fact that the Rothko parties have not made the materials generally available to the public and have given access only to selected scholars and others.

I hold that the materials include "business information" within the meaning of the Stipulated Protective Order. Himmelfarb contends that some of the designated information supports his claim that his painting is a Rothko. If he is right, the information could increase the value of his painting by tens of millions of dollars. Information that bears so powerfully on the value of an asset is "business information." Further, the Rothko parties' desire to avoid costly and potentially ruinous litigation is a business purpose.

### 2. The Stipulated Protective Order must be read to protect the Rothko parties' confidentiality interests.

Himmelfarb complains that the Rothko parties are demanding protection that the language of the Stipulated Protective Order does not support. I disagree. One cannot properly interpret the Stipulated Protective Order without considering the factual circumstances in which it was entered and the applicable legal background.

The relevant circumstances are the fact that Himmelfarb sought the Rothko parties' information for a commercial purpose, not a litigation purpose. Ordinarily, parties use discovery to obtain information that could help a court decide a disputed

---

[15] Black's Law Dictionary 339 (9th ed. 2009).

7

U.S. Bankruptcy Court - Hawaii    #13-00229    Dkt # 368    Filed 05/28/15    Page 7 of 16

issue. This is not Himmelfarb's purpose; no one has asked this court to decide whether Himmelfarb's painting is a Rothko, and it is hard to imagine that such a case could ever be brought in the bankruptcy court. Instead, Himmerfarb is employing the court's power to compel the production of information to help him sell his painting for a lot of money. In a bankruptcy case, Himmelfarb can conduct discovery to maximize the value of estate assets. But it would be a mistake to interpret the Stipulated Protective Order without regard for the fact that Himmefarb is using the court's compulsory process for purely commercial purposes.

The legal background is the Federal Rules of Civil Procedure, to which the Stipulated Protective Order refers. Under the rules, the court may, for good cause, issue an order to protect a party from undue burden or expense if it has been asked to produce confidential commercial information.[16] There is no absolute privilege for confidential information.[17] Instead, the court " weigh[s] the claim to privacy against the need for disclosure in each case, and [the court] can enter protective orders allowing discovery but limiting the use of the discovered documents."[18]

Himmelfarb argues that the rules are irrelevant, and that only the words of the

---

[16] Fed R. Civ. P. 26(c)(1)(G).

[17] *Pasadena Oil & Gas Wyoming LLC v. Montana Oil Properties Inc*, 320 F. App'x 675, 677 (9th Cir. 2009) (citing *Federal Open Market Committee of Federal Reserve System v. Merrill*, 443 U.S. 340, 362 (1979); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992)).

[18] *Id.*

8

U.S. Bankruptcy Court - Hawaii   #13-00229   Dkt # 368   Filed 05/28/15   Page 8 of 16

Stipulated Protective Order are applicable. But the Stipulated Protective Order explicitly refers to the rules; it says that the designated materials must be "subject to protection" under those rules. Further, it is not reasonable to assume that the Rothko parties knowingly agreed to accept *less* protection for their confidential information than they could have obtained. Finally, even if the rules are not directly applicable, they are still useful in helping to define the phrase "confidential business information," which is very similar to the phrase "confidential commercial information" used in the rules, and in illustrating the kinds of relief the court can craft to protect both the producing parties' confidentiality interests and the receiving party's interest in using the information.

Considering the factual and legal context, the Stipulated Protective Order should be read in a way that allows Himmelfarb to use the materials but carefully protects the legitimate rights and interests of the Rothko parties.

Himmelfarb also contends that the Rothko parties' concern about being drawn into litigation is "contrived." He says that, "[i]nstead of being afraid of being drawn into litigation, [the Rothko parties'] motivation appears to be spite and/or malice."[19] He complains of the Rothko parties' "prior suppression of information" regarding the photograph and the painting. This contention borders on the delusional. There is

---

[19] Dkt. 354-4 at 17.

9

U.S. Bankruptcy Court - Hawaii   #13-00229   Dkt # 368   Filed 05/28/15   Page 9 of 16

no evidence whatsoever that the Rothko parties bear any ill will toward Himmelfarb. Further, Himmelfarb seems to think that the Rothko parties had a duty of some kind to help him authenticate his painting. He is mistaken; prior to Himmelfarb's bankruptcy filing, the Rothko parties had every right to ignore or decline his requests for information.

Himmelfarb attaches great significance to an email in which an employee of the Christie's auction house wrote that, "if we [apparently meaning Christie's] go forward with the process [apparently meaning an effort to sell Himmelfarb's painting] please note that Christopher Rothko has asked to be contacted and involved with the others from the beginning."[20] According to Himmelfarb, this means that Mr. Rothko has voluntarily injected himself into the authentication of the painting in a way that undercuts Himmelfarb's efforts and exposes Mr. Rothko to liability. I disagree. There is no evidence tying this hearsay statement to Mr. Rothko or explaining what it means. The statement about being "involved with the others from the beginning" could mean that someone at Christie's thought that Mr. Rothko might be interested in bidding for the painting. The email does not support Himmelfarb's implication that the Rothko parties are attempting to sabotage his effort to authenticate his painting.

---

[20] Dkt. 359-1 at 2.

U.S. Bankruptcy Court - Hawaii   #13-00229   Dkt # 368   Filed 05/28/15   Page 10 of 16

In sum, the Rothko parties' interest in privacy outweighs Himmelfarb's desire for complete disclosure. Himmelfarb is trying to obtain information from third parties who have little connection to this bankruptcy in order to maximize the selling price of his painting. The Rothko parties have a legitimate interest in avoiding litigation, and there is no evidence that they are withholding the information for any improper purpose. I denied the countermotion in part because Himmelfarb was not entitled to unlimited use of the designated materials.

C. *Rothko Parties' Alleged Contempt*

To summarize, I hold that the Rothko parties did not violate the Stipulated Protective Order when they made their confidentiality designations.

Further, even if there were a violation, Himmelfarb has not shown that it was willful. The Rothko parties, advised by experienced counsel, thought they were complying with the order and were willing to engage in discussions with Himmelfarb's counsel if he disagreed.

Finally, even if the Rothko parties violated the Stipulated Protective Order, any sanctions would be primarily compensatory. Himmelfarb does not identify any harm or prejudice he suffered due to the designations. Any such prejudice was temporary and could have been eliminated long ago if he had decided to discuss the matter with the Rothko parties rather than flout the Stipulated Protective Order.

11

U.S. Bankruptcy Court - Hawaii   #13-00229   Dkt # 368   Filed 05/28/15   Page 11 of 16

D.  *Narrowing the Confidentiality Designation*

Although the matter could and should have been resolved long ago, it is still appropriate to inquire whether the Rothko parties' confidentiality designations should be narrowed.

The Rothko parties continue to assert that none of the documents and deposition testimony other than the photograph should be revealed to anyone. They have, however, provided a list of items the disclosure of which they think would be most harmful to their interests.[21] This list would lift the confidentiality designation from most of the deposition transcripts and a few of the deposition exhibits. Himmelfarb wants the court to permit disclosure of some of the materials on the Rothko parties' list, including a relatively small additional portion of the deposition transcript and most of the exhibits.[22]

I agree with the Rothko parties that disclosure of the additional materials identified by Himmelfarb would expose them to an unreasonable risk of litigation. I also think that the additional disclosure would not materially help Himmelfarb in his quest to persuade buyers that his painting is a work by Mark Rothko. I have already authorized Himmelfarb to disclose that a photograph resembling his painting was

---

[21] Dkt. 347-1 at 4-10. Note that there is apparently a typographical error in the second box on page 7; the reference to "69:8-1" probably should read "69:8-11." *See also* dkt. 347 at 27 (stating that the Rothko parties do not object to the disclosure of deposition exhibits A, B, D, and Y).

[22] Dkt. 359 at 3-8.

12

U.S. Bankruptcy Court - Hawaii    #13-00229    Dkt # 368    Filed 05/28/15    Page 12 of 16

found in the Rothko parties' files; the fact that the photograph was found in a certain location and adjacent to certain other materials does not add much if anything to his claim. Therefore, I will lift the confidentiality designation to the extent suggested by the Rothko parties, but no farther. Counsel for the Rothko parties is directed to prepare and provide to counsel for Himmelfarb a set of the materials with appropriate deletions and redactions.

When I authorized Himmelfarb to disclose the photograph, I required him to include a disclaimer that was intended to minimize the risk that a recipient of the photograph would claim that the Rothko parties had authenticated the painting. For the same reason, the following disclaimer must accompany any disclosure of the other materials the use of which I am now authorizing.

> These materials were produced to the Owner by Marion Kahan and Christopher Rothko in 2013, in response to subpoenas seeking testimony and material that may relate to the work held by the Owner. Since 1987, Ms. Kahan has been the manager for the "Rothko Collection," meaning the Estate of Mark Rothko under the custodianship of his children, Kate Rothko Prizel and Christopher Rothko. In that capacity, she is responsible for the handling of loans, storage, condition reports, research and archives, cataloging of works, and archiving of papers pertaining to the artist's life and work. Ms. Kahan and the Rothko family believe that the mere presence of materials in Ms. Kahan's possession is not an indication that those materials originated from the artist or his family. Ms. Kahan and the Rothko family are not in the business of authenticating Mark Rothko paintings or other works of art, and they do not undertake to do so here. Ms. Kahan and the Rothko family do not make any representation or warranty of any kind and they expressly disclaim liability for anyone's use of the information which the court compelled them to produce to the Owner. They specifically caution against drawing any undue inference of authenticity based on their possession of the attached materials or their

13

deposition testimony. Any party purchasing Owner's painting is responsible to conduct such party's own due diligence and arrive at its own conclusions about its authenticity.

It is also appropriate to clarify my prior order regarding the placement and use of the disclaimer. Himmelfarb has prepared and disseminated a sixty-four page prospectus that includes many copies of the photograph.[23] On each page on which the photograph appears, Himmelfarb has included the mandatory disclaimer. The Rothko parties object that the disclaimer is not prominent because it appears at the bottom of the page in a smaller typeface than the rest of the print on the page. The Rothko parties also contend that the text of the prospectus contradicts the disclaimer by (according to the Rothko parties) suggesting that the Rothko parties support Himmelfarb's claims.

There is no perfect solution to the Rothko parties' valid concerns. Himmelfarb has already demonstrated his willingness to use the Rothko parties' information to the fullest, regardless of any contrary order. Nevertheless, Himmelfarb has a right to express his own opinions. He has no right, however, to attribute statements or opinions to the Rothko parties or to imply that the Rothko parties support his opinions.

To mitigate the Rothko parties' concerns, I will require that any disclosure of

---

[23] Dkt. 347-05.

14

U.S. Bankruptcy Court - Hawaii   #13-00229   Dkt # 368   Filed 05/28/15   Page 14 of 16

any materials produced by the Rothko parties shall be on a separate page with no text other than the disclaimer, and that the disclaimer shall be presented on each such page in a typeface at least as large as any other typeface on that page.

### III. The Fine

The district court held that a fine of $9,000 was within my power, but remanded the amount of the fine for reconsideration in light of my ruling on Himmelfarb's countermotion for contempt.

I have held that the Rothko parties did not violate the Stipulated Protective Order and that, even if there were a violation, it was not willful and did not harm Himmelfarb. In contrast, Himmelfarb deliberately violated the court's orders in a way which has harmed the Rothko parties. Himmelfarb has never even attempted to offer an excuse for his conduct. I remain convinced that he never intended to comply with the protective order and that he always planned to use the information for his benefit regardless of the orders. This is the most egregious contempt I have seen in my entire career as a lawyer and a judge.

Therefore, I reaffirm my decision that Himmelfarb should pay a $9,000.00 fine. As I said in my initial decision, I would impose a substantially larger fine if I had the power to do so. Himmelfarb violated the orders because he hoped to garner tens of millions of dollars. A $9,000.00 fine is not even a slap on the wrist.

\* \* \*

U.S. Bankruptcy Court - Hawaii   #13-00229   Dkt # 368   Filed 05/28/15   Page 15 of 16

Counsel for the Rothko parties shall submit a form of final judgment consistent with this decision.

## END OF DECISION

U.S. Bankruptcy Court - Hawaii   #13-00229   Dkt # 368   Filed  05/28/15   Page 16 of 16